# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL BOGONI, | |
| Plaintiff, | Case No. 11 CIV 8093 (RJH) |
| vs. | |
| VICDANIA GOMEZ, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Paul Bogoni respectfully submits this Memorandum of Law in Support of his Motion for Preliminary Injunction, pursuant to Fed. R. Civ. P. 65 and the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 8131.

## INTRODUCTION

This case involves the bad-faith appropriation of a personal name for ransom and profit. The name in question is that of Plaintiff Paul Bogoni, a well-known New York City real estate investor and philanthropist who has had his name hijacked by the Defendant, Ms. Vicdania Gomez.

Defendant Gomez has appropriated Mr. Bogoni's name and registered it as two separate domain names on the Internet in the form of <paulbogoni.com> and <paulbogoni.org> (collectively, the "Domain Names"). *See* Declaration of Paul Bogoni ("Decl.") ¶¶ 2-3, filed herewith. Immediately after doing so, the Defendant attempted to

ransom these Domain Names back to the Plaintiff for one million dollars each or sell them to third parties for the same price. Verified Complaint ("Cplt.") ¶ 10.

This is the exact bad faith use of a domain name that the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 8131, was enacted to prohibit. Because Defendant's continued use of the Domain Names irreparably injures Plaintiff in the reputation and goodwill associated with his name, Plaintiff seeks a preliminary injunction ordering her to transfer the Domain Names to Mr. Bogoni.

## FACTUAL BACKGROUND

Plaintiff Paul Bogoni is a prominent real estate investor and philanthropist in the New York City metropolitan area. Cplt. ¶ 14. His name appears in the New York media, and in the name of his foundation, the Paul and Irene Bogoni Foundation, which has given several million dollars to charitable causes. *Id.*

In late October 2011, Plaintiff learned that Defendant Vicdania Gomez, whom Plaintiff had previously known socially, registered the Internet domain names <paulbogoni.com> and <paulbogoni.org>, both of which precisely track the spelling of Plaintiff's legal name. Decl. ¶ 8; Cplt. ¶¶ 6-7. According to a search on the Internet Whois database, Defendant registered these domain names on October 25, 2011, after she had threatened Plaintiff that she would disrupt his business and scandalize his reputation. Decl. ¶¶ 5,8. The Domain Names were registered with domain-name registrar GoDaddy.com, Inc., whose standard fees for domain name registration was $11.99 for <.com> domains, and $6.99 for <.org> domains. *Id.* ¶ 6.

2

Within ten days of registering the Domain Names, Ms. Gomez set up a website attempting to extort two million dollars out of Plaintiff for the transfer of the Domain Names. She also offered to sell the Domain Names to third parties for the same price. The domain name <paulbogoni.org> currently resolves to a web page that contains the following public notice: "**I will am** [sic] **also selling this domain name www.PAULBOGONI.ORG and www.PAULBOGONI.COM for $1Million (ONE MILLION DOLLARS) each.**" Cplt. ¶ 10; Decl. ¶ 9.

According to the Internet Whois database, the domain name <paulbogoni.org> is registered under Ms. Gomez's own name, and she is listed as both the administrative and technical contacts. Cplt. ¶ 6. Ms. Gomez is also listed as the technical and administrative contacts for <paulbogoni.com>, although it appears that she registered that domain in the name of her young daughter, Victoria. *Id.* ¶ 7.

Mr. Bogoni never gave Ms. Gomez, her daughter, or anyone else permission to use his name in an Internet domain name. Decl. ¶ 4. He certainly did not consent to having his name registered as a domain name and then ransomed back to him. As a direct result of Ms. Gomez's actions, Mr. Bogoni has lost control over the reputation and goodwill associated with his personal name. Cplt. ¶ 17. Already, business associates and social acquaintances have expressed concern at the websites associated with the Domain Names. Decl. ¶ 8. In addition, the Domain Names are luring Mr. Bogoni's business and personal contacts to a website which he did not authorize. Cplt. ¶ 28. Further, as Internet search engines such as Google and Yahoo! continue to index the

websites associated with Ms. Gomez's unlawful use of the Domain Names, the injury to Mr. Bogoni's reputation will only become exacerbated.

In the meantime, Defendant has made no legitimate use of the Domain Names. Cplt. ¶ 26. With the exception of the statement of extortion on the <paulbogoni.org> page, the websites contain minimal content. In light of this, the facts show that Defendant registered the Domain Names with the specific intent of collecting an illegitimate, illegal financial windfall.

## **ARGUMENT**

The Defendant's registration and use of the domain names <paulbogoni.com> and <paulbogoni.org> constitute a violation of the Anticybersquatting Consumer Protection Act, codified at 15 U.S.C. § 8131, because the Domain Names are exact reproductions of the Plaintiff's legal name.

The Defendant has registered these domain names for the sole purpose of selling them to the Plaintiff for a profit well in excess of any out-of-pocket expenses that she may have incurred in procuring them. Plaintiff has a right to control his own name on the Internet, and the Defendant has no true interest in the Domain Names except as instruments with which to seek to extort money from the Plaintiff, or to profit by selling them to third parties. Congress has specifically chosen to prohibit such actions, yet the Defendant has ignored this congressional mandate and has acted with extreme bad faith.

A.      **Preliminary Injunction Standard**

A plaintiff is entitled to a preliminary injunction if he can establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, ___ U.S. ___, 129 S.Ct. 365, 374 (2008).

Notwithstanding the Supreme Court's decision in *Winter*, the Second Circuit continues to allows a party to obtain a preliminary injunction if he can establish "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009) (internal quotation marks omitted); *see also New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 313 (S.D.N.Y. 2010) (granting preliminary injunction in ACPA case). Plaintiff Mr. Bogoni is entitled to a preliminary injunction under either standard.

B.      **Plaintiff Can Demonstrate an Overwhelming Likelihood of Success on the Merits Under 15 U.S.C. § 8131.**

The ACPA was enacted as a Congressional reaction to the very conduct engaged in by the Defendant in this case.

> The Anticybersquatting Consumer Protection Act provides for federal protection against the unauthorized use of personal names as domain names by individuals with a "specific intent" to profit from such name by selling the domain name for financial gain to that person or any third

> party. In passing this Act, Congress concluded that some
> form of federal protection was necessary to prevent acts of
> abusive domain name registration involving personal
> names.

65 Fed. Reg. 10763, 10764.

The purpose of the ACPA is to "curtail one form of 'cybersquatting' – the act of registering someone else's name as a domain name for the purpose of demanding remuneration from the person in exchange for the domain name." 145 Cong. Rec. S14715 (Nov. 7, 1999) (statement of Sen. Lott), *quoted in Schmidheiny v. Weber*, 319 F.3d 581, 582 (3d Cir. 2003); *see also Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (The ACPA made it "illegal for a person to register or to use with the 'bad faith' intent to profit from an Internet domain name that is 'identical or confusingly similar' to the … name of another person or company.")

The initial version of the ACPA provided protection for personal names only to recognized celebrities, stating: "A person shall be liable in a civil action by the owner of a mark, including a famous personal name." 145 Cong. Rec. H 10823, H10823 (106th Cong. Oct. 26, 1999) (emphasis added). Nevertheless, Representative Bono prevailed upon his colleagues to expand this protection to all individuals: "This protection in my opinion must not be limited to the famous or just celebrities, it must be universal." 145 Cong. Rec. H10823, H10830 (106th Cong., Oct. 26, 1999). As the ACPA wound its way through the legislative process, the Congressional intent to protect personal names became fully apparent. "This bill prevents cybersquatting when a trademark, service mark, famous name *or any personal name* is involved." 145 Cong. Rec. H11811, H11815 (106th Cong., Nov. 9, 1999) (emphasis added). Senator Hatch

6

agreed, and upon presentation for the President's signature, it is clear that the ACPA was

intended to protect both trademarks and personal names.

> As with trademark cybersquatting, cybersquatting of
> personal names poses similar threats to consumers and e-
> commerce in that it causes confusion as to the source or
> sponsorship of goods or services, including confusion as to
> the sponsorship or affiliation of websites bearing
> individuals' names. In addition, more and more people are
> being harmed by people who register other peoples names
> and hold them out for sale for huge sums or money or use
> them for various nefarious purposes.

145 Cong. Rec. S14986, S15019 (106th Cong., Nov. 19, 1999).

The provision Congress enacted, 15 U.S.C. § 8131, requires only that the

Plaintiff demonstrate that the Defendant had a "specific intent to profit." This standard

comes with remedies of forfeiture and discretionary awards of attorneys' fees and costs to

the prevailing party. Under Section 8131, Plaintiff Mr. Bogoni is able to show an

overwhelming likelihood of success on the merits. The relevant statutory provision

states:

> Any person who registers a domain name that consists of
> the name of another living person, or a name substantially
> and confusingly similar thereto, without that person's
> consent, with the specific intent to profit from such name
> by selling the domain name for financial gain to that person
> or any third party, shall be liable in a civil action by such
> person.

15 U.S.C. § 8131(1).

The factors above are already proven by evidence of record or by

indisputable facts: The Domain Names are <paulbogoni.com> and <paulbogoni.org>,

and the Plaintiff's name is "Paul Bogoni." The spelling is identical. Plaintiff never gave

his consent for the registration. Defendant registered the domain name on October 25,

2011 and at most nine days later, Defendant attempted to sell the Domain Names to Mr. Bogoni and/or third parties for one million dollars each. *See* Cplt. ¶ 10. At that time, the applicable registrar, GoDaddy.com, Inc. sold domain name registration for $11.99 for <.com> domains and $6.99 for <.org> domains. Decl. ¶ 6. Accordingly, Defendant sought almost two million dollars of profit for the registration of Defendant's personal name on the Internet for nine days. This demonstrates a specific intent to profit, and thus fully satisfies the civil liability prohibitions of 15 U.S.C. § 8131.

The only exception to liability under this particular portion of the ACPA is a very narrow carve-out provided by 15 U.S.C. § 8131(1)(B). This was enacted so that, for example, movie studios or record companies could exploit the names of their performers. The carve-out requires that the domain name must have been (1) registered in good faith; (2) the domain name must be affiliated with, or related to a work of authorship protected under Title 17; (3) the registrant of the domain name must be the copyright owner of said eligible work; (4) the intent to profit from the domain name must be in conjunction with the lawful exploitation of the Title 17 protected work; and (5) there must be no contract between the parties that prohibits such exploitation. 15 U.S.C. § 8131(1)(B). This exception clearly does not apply.

### C.     Plaintiff Will Suffer Irreparable Harm Absent a Preliminary Injunction, and the Balance of Hardships Tips in His Favor.

When a plaintiff demonstrates a substantial likelihood of success on the merits of a cybersquatting action, as is the case here, the plaintiff will normally be entitled to preliminary injunctive relief. *See, e.g., New York City Triathlon*, 704 F. Supp. at 342; *Shields. v. Zuccarini*, 254 F.3d 476, 486 (3d Cir. 2001) (plaintiffs "will suffer

damage to his reputation and a loss of goodwill if Zuccarini is allowed to operate his offending web sites"); *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) ("So long as www.audisport.com stayed online, there was potential for future harm, and therefore, there was no adequate remedy at law.")  Accordingly, the irreparable injury prong is inexorably intertwined with the success on the merits claim in ACPA cases.

Moreover, here Mr. Bogoni does suffer and will continue to suffer irreparable harm to his reputation and good name should a preliminary injunction not issue.  Plaintiff's name is held in high regard in his personal, business and philanthropic efforts.  Defendant's use of Mr. Bogoni's personal name for extortionate and other bad faith purposes tarnishes the goodwill that he has established in connection with his name. The websites associated with the Domain Names create a likelihood of confusion as to the source, sponsorship, affiliation and endorsement of those sites.

The balance of hardships certainly favors Plaintiff.  He has a strong interest in protecting the goodwill embodied in his name.  Defendant, by comparison, will suffer little harm if she is forced to relinquish control of the Domain Names pending trial. To date, the Defendant has made virtually no investment in the site, aside from her registration fees.

### D.    The Public Interest Will Not Be Harmed by the Issuance of the Requested Injunction

The issuance of the requested injunction will not conflict with the public interest. The provisions of the ACPA serve to protect the interests of consumers and businesses alike in preventing deception and confusion caused by the bad faith

registration of domain names that are identical or confusingly similar to personal names.
In cases arising under the ACPA, "public interest. . . is a synonym for the right of the
public not to be deceived or confused." *Shields v. Zuccarini*, 254 F.3d 476, 486 (3d Cir.
2001). The public interest consideration, then, weighs in favor of issuance of a
preliminary injuction.

### E.    The Remedy Sought Is Typical in a Cybersquatting case

Forfeiture of the offending domain name and costs of suit are expressly
provided for under the Anticybersquatting Consumer Protection Act. *See, e.g., Agri-Supply Co. Inc. v. Agrisupply.com*, 457 F.Supp. 2d 660, 664 (E.D. Va. 2006).

The ACPA provides for that "a court may award injunctive relief,
including the forfeiture or cancellation of the domain name or the transfer of the domain
name to the plaintiff." 15 U.S.C. § 8131(2). Pursuant to this legal authority, the Plaintiff
requests that the Court order the concerned registrar, GoDaddy.com, Inc., pursuant to 15
U.S.C. § 8131(2), and the Defendant, to take any and all actions necessary to transfer
ownership of the domain names <paulbogoni.com> and <paulbogoni.org> to the
ownership of Plaintiff, Paul Bogoni.

### F.    Security

Under Fed. R. Civ. P. 65(c), district courts have "wide discretion in the
matter of security and it has been held proper for the court to require no bond where there
has been no proof of likelihood of harm." *Doctor's Associates. Inc. v. Stuart*, 85 F.3d
975, 985 (2d Cir.1996). Given that the only financial gain that could accrue to the
Defendant by owning this domain name would be the ill-gotten proceeds of an extortion

attempt, the Defendant will suffer no actual harm from turnover of the Domain Names

other than the inability to continue her illegal cybersquatting activities. The Defendant

cannot credibly argue that any bond should be necessary in this case. Plaintiff's

likelihood of success here is overwhelming, and Defendant has not made any effort to use

the Domain Names for a legitimate commercial or noncommercial purpose. Given the

fact that the Domain Names were purchased for a less than twenty dollars, a $20 bond

would be more than sufficient, should any bond be imposed at all.

## CONCLUSION

     For the foregoing reasons, Plaintiff Paul Bogoni respectfully requests that

this Court grant his motion for preliminary injunction.

Dated:    November 9, 2011
          New York, New York

                        Respectfully submitted,

                        LEWIS & LIN, LLC

                        By: _____
                            David D. Lin (DL-3666)
                        45 Main Street, Suite 608
                        Brooklyn, NY 11201
                        Tel: (718) 243-9323
                        Fax: (718) 243-9326

                        *Attorneys for Plaintiff Paul Bogoni*

11

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2011, a true and correct copy of the

foregoing ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION,

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY

INJUNCTION, and DECLARATION OF PLAINTIFF PAUL BOGONI were delivered

to Plaintiff by hand delivery and first class mail postage paid at the following address:

   Vicdania Gomez
   755 West End Ave., Apt. 2B
   New York, NY 10025

                  David D. Lin