UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PAUL BOGONI,                                         :
                                                     :              11 Civ. 08093
                                   *Plaintiff*,      :
                                                     :      **MEMORANDUM OPINION**
               —against—                             :              **& ORDER**
                                                     :
VICDANIA GOMEZ ,                                     :
                                                     :
                                   *Defendant*.      :
------------------------------------------------------------x

Richard J. Holwell, *District Judge*:

        Before the Court is plaintiff Paul Bogoni's motion pursuant to Federal Rule of

Civil Procedure 65 for an order preliminarily enjoining *pro se* defendant Vicdania Gomez

and all others acting in concert with her from using various Internet domain names

registered to the defendant and associated with the plaintiff's name.  For the following

reasons, the motion is GRANTED.

                            **BACKGROUND**

 I. Factual Background

        Plaintiff Paul Bogoni is a "prominent real estate investor and philanthropist in the

New York metropolitan area."  Compl. ¶ 14 (Nov. 9, 2011), ECF No. 1.  Defendant

Vicdania Gomez is the owner and registrant of Internet domain names located at

paulbogoni.org and paulbogoni.com (the "Domain Names").  *See* Compl. ¶¶ 6–7.  Gomez

purchased and registered the Domain Names on or about October 25, 2011, without the

plaintiff's authorization.  *See* Compl. ¶¶ 10, 13.  The relationship of the parties prior to

this litigation is not fully documented in the record, but during oral argument before the

Court it became clear that the matter here is one in a series of domestic disputes between them.

The Web site at paulbogoni.org[1] purports to be written and run by the defendant's minor daughter, Vittoria Gomez.[2] *See* Profile ("VFB Profile"), Vittoria's Freedom Blog, http://www.paulbogoni.org/profile.html (Oct. 26, 2011), Exh. C to Compl.; *see also* Compl. ¶ 7 (alleging that paulbogoni.com "was falsely registered in the name of Victoria Bogoni, who is Defendant's minor daughter"). A public notice on paulbogoni.org's "About" page, dated October 26, 2011, states: "Hi, I'm Vittoria and this my first website that my mommy helped me launch in order to begin my journey in making the world a better place." VFB Profile, http://www.paulbogoni.org/profile.html. The page explains that Vittoria's "first stop" in her "journey" is "the basic fundamental freedom granted to us by the constitution which is 'Freedom of Speech.'" *Id.* The page represents that at an arts institution named "Make Meaning in the Upper West Side of Manhattan," Vittoria constructed an "Angel" and her mother (the defendant) constructed an "Airplane."[3] *Id.* Photographs of the Airplane reveal that the object has the name "Bogoni" painted on it in black letters; the Angel does not have any words on its surface. The page concludes by stating: "I will be putting my Angel and Mommy's Jet up for auction soon and donating all proceeds to organizations that aid in the protections of free speech. I promise not steal your money or give it to unscrupulous money managers or lawyers that will lie, cheat and steal it or invest it in Mortgage Backed Securities." *Id.* The page concludes, in bold

---

[1] The Web site at paulbogoni.com appears to be inactive at this time.

[2] The plaintiff's submissions refer to the defendant's three-and-a-half-year-old daughter as "Victoria Gomez," while the Web site purports to be written by "Vittoria."

[3] At the hearing on the instant motion, the defendant submitted an exhibit, including photographs of the artwork and receipts from Make Meaning, corroborating this account on the Web site.

letters: "I will am [sic] also selling this domain name www.PAULBOGONI.ORG and

www.PAULBOGONI.COM for $1Million (ONE MILLION DOLLARS) each." *Id.*; *see*

Compl. ¶ 10.

Aside from the Profile page, Vittoria's Freedom Blog hosts only two items. The

first, posted October 25, 2011, reproduces the text of the First Amendment. *See* First

Post, Vittoria's Freedom Blog, http://www.paulbogoni.org/blog/1/first-blog.html (Oct.

25, 2011). The second, posted December 13, 2011, includes a photograph of the

"Airplane," or "Jet," *see* Exh. A to Answer, ECF No. 8, and is titled "For Sale!!  Call

Vicky Gomez 917-596-4441."  For Sale, Vittoria's Freedom Blog,

http://www.paulbogoni.org/blog/2/for-sale--call-vicky-gomez-917-596-4441.html (Dec.

13, 2011).

Up to the date of the filing of the Complaint, the plaintiff alleges, Gomez "ha[d]

not made any legitimate noncommercial or fair use of the Domain Names" and "ha[d] not

used the Domain Names in connection with any bona fide offering of goods and

services." Compl. ¶ 16. The plaintiff further alleges that Gomez's "conduct has caused

[him] to lose control over the reputation and goodwill associated with this personal name,

both for personal and business purposes, and he has suffered and continues to suffer other

immeasurable damages." *Id.* ¶ 17.  Without an injunction, the plaintiff represents, he

"will suffer irreparable harm because the damages sustained will be immeasurable,

unpredictable, and unending." *Id.*

## II. Procedural Background

On November 9, 2011, the plaintiff filed the initial Complaint in this matter in

U.S. District Court for the Southern District of New York.  The next day, Judge Robert

W. Sweet, the District's on-duty Part I judge, endorsed an Order to Show Cause for

Preliminary Injunction (the "Order") and set a hearing for November 21, 2011.[4]  The

Court later adjourned that hearing date until December 20, 2011.  On December 2, 2011,

the plaintiff filed a memorandum of law in support of the preliminary-injunction motion

in conjunction with his earlier filings, and the defendant filed an opposition memorandum

on December 19, 2011.  The parties attended oral argument before the Court on

December 20, 2011, at the conclusion of which the Court reserved decision pending the

issuance of this Order.

## PRELIMINARY INJUNCTION LEGAL STANDARD

In order to justify a preliminary injunction, a movant must demonstrate (1)

"irreparable harm absent injunctive relief"; (2) "either a likelihood of success on the

merits, or a serious question going to the merits to make them a fair ground for trial, with

a balance of hardships tipping decidedly in the plaintiff's favor"; and (3) "that the

public's interest weighs in favor of granting an injunction."  *Metro. Taxicab Bd. of Trade

v. City of N.Y.*, 615 F.3d 152, 156 (2d Cir. 2010) (citations and internal quotation marks

omitted).

## DISCUSSION

I. Likelihood of Success on the Merits & Balance of Hardships

A. Governing Law

The plaintiff's complaint, and motion for a preliminary injunction, contends that

the defendant's conduct violates a provision of the Anticybersquatting Consumer

---

[4] Due to an administrative error, the Order was not filed as endorsed by the Court, and the parties were not notified as to the Court's endorsement.  Upon recognizing the error, on November 18, 2011, the Court filed the endorsed Order and simultaneously entered an order scheduling a teleconference to determine a schedule for briefing and a hearing on the preliminary-injunction motion. *See* Memo Endorsement on Order to Show Cause for Preliminary Injunction at 2 (Nov. 18, 2011), ECF No. 4.

Protection Act ("ACPA"), 15 U.S.C. § 8131, which provides cyberpiracy protections for individuals. Section 8131 provides:

> Any person who registers a domain name that consists of the name of *another living person*, or a name substantially and confusingly similar thereto, *without that person's consent*, with the *specific intent to profit* from such name *by selling the domain name for financial gain* to that person or any third party, shall be liable in a civil action by such person.

15 U.S.C. § 8131(1)(A) (emphases added). The statute also provides for one exception to civil liability:

> A person who *in good faith* registers a domain name consisting of the name of another living person, or a name substantially and confusingly similar thereto, shall not be liable under this paragraph if such name is *used in, affiliated with, or related to a work of authorship protected under Title 17*, including a work made for hire as defined in section 101 of Title 17, and if the person registering the domain name is the *copyright owner or licensee* of the work, the person inte*nds to sell the domain name in conjunction with the lawful exploitation of the work*, and such registration is not prohibited by a contract between the registrant and the named person.

*Id.* § 8131(1)(B) (emphases added). Finally, the statute authorizes a court to "award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff," as well as, "in its discretion, [to] award costs and attorneys fees to the prevailing party." *Id.* § 8131(2).

B. Application

The plaintiff argues that the defendant's conduct very clearly tracks the statutory language of section 8131(1)(A) and that the defendant is liable for violation of the statute. The defendant contends that the plaintiff cannot and has not demonstrated her specific intent to profit from the sale of the Domain Names, and that, in any event, she qualifies for the good-faith exception embodied in section 8131(1)(B). The court concludes that

the plaintiff has satisfied his burden to demonstrate a likelihood on the merits of his claim, that the defendant does not meet the requirement of good faith necessary to qualify for the statutory exemption, and that the balance of hardships tips strongly in favor of the plaintiff.

Section 8131(1)(A)

As applicable here, a violation of section 8131 requires that the plaintiff demonstrate that the defendant (1) registered a domain name that consists of the name of the defendant, (2) did so without the defendant's consent, and (3) had the specific intent to profit from the defendant's name by selling the domain name for financial gain.  *See id.* § 8131(1)(A).  The first two elements—registration of a domain name in the name of the defendant without the defendant's consent—are uncontested by the defendant here. The defendant does dispute, however, that the plaintiff has demonstrated her specific intent to profit from the sale of the Domain Names.

There is very little case law interpreting section 8131, and even less discussing the meaning of the statutory term "specific intent to profit."  In one of the lone decisions to address the issue—*Carl v. BernardJCarl.com*, 662 F. Supp. 2d 487 (E.D. Va. 2009)—the district court discussed the meaning of that phrase where a magistrate judge had recommended the dismissal of a cyberpiracy claim under 15 U.S.C. § 1129, later transferred to 15 U.S.C. § 8131.  *See Carl*, 662 F. Supp. 2d at 497–98.  The court agreed with the magistrate that the plaintiff's complaint failed to allege a violation of the statute because the plaintiff had merely alleged that the "defendants intended . . . that plaintiff pay them money to settle an alleged debt."  *Id.* at 498.  In the court's view, the defendants' conduct fell short of specific intent to profit because their true objective was

not a "profit," but only a demand that a past debt be paid.  *Id.*  On appeal, the Fourth

Circuit affirmed the district court's decision on this point.  *See Carl v. BernardJCarl*, 409

F. App'x 628, 630 (4th Cir. 2010) (per curium) (unpublished).

In *Salle v. Meadows*, No. 07 Civ. 1089, 2007 WL 4463920 (M.D. Fla. Dec. 17,

2007), however, the district court arrived at the opposite conclusion.  In *Salle*, the

defendant argued that his intent when registering the domain name of the plaintiff was

merely to "recover money that he was owed" by the plaintiff.  *Id.* at *2.  The court

rejected that argument, holding that "cyber-extortion is not a permissible way to recover a

debt," and that the defendant's actions constituted "specific intent to profit" under the

statute.  *Id.*

A related cyberpiracy statute, 15 U.S.C. § 1125, requires as an element "a bad

faith intent to profit" from the registration of a domain name associated with a registered

trademark.  *See id.* § 1125(d)(1)(A)(i).  The statute lists nine factors that "a court may

consider" when "determining whether a person has [such] bad faith intent," including—

as relevant here—the registrant's prior use of the domain name to conduct bona fide

business, *see id.* § 1125(d)(1)(B)(i)(III); the registrant's offer to sell the domain names

"without having used, or having an intent to use, the domain name in the bona fide

offering of any goods or services," *id.* § 1125(d)(1)(B)(i)(VI); and the registrant's

"acquisition of multiple domain names" related to the mark, *id.* § 1125(d)(1)(B)(i)(VIII).

*See, e.g.*, *Mattel, Inc. v. Internet Dimensions Inc.*, No. 99 Civ. 10066, 2000 WL 973745,

at *3–*6 (S.D.N.Y. July 13, 2000) (interpreting section 1125 and concluding that the

defendant possessed a "bad faith intent to profit" from a Web site registration based upon

a consideration of the factors in the statute).  While the Second Circuit has explicitly held

that "'bad faith intent to profit' are terms of art in the ACPA and hence should not necessarily be equated with 'bad faith' in other contexts," *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 n.13 (2d Cir. 2000), section 8131 is also part of the ACPA, and the statutes are so strikingly similar that this Court considers the factors listed in section 1125 to be helpful in conducting the inquiry required here.

Furthermore, in *Schmidheiny v. Weber*, 285 F. Supp. 2d 613 (E.D. Pa. 2003), the district court granted summary judgment on a cyberpiracy claim brought under the same statute at issue here—though, at that time, located in a different section of the U.S. Code—based on its conclusion that the defendants possessed the "specific intent to profit" from their domain-name registrations. *See id.* at 628. The court based its conclusion on a consideration of factors including the defendants' past similar behavior, the short time lapse between registration and offer for sale, and the placement of the domain names "for auction at a price that had no reasonable connection to its value to anyone other than the plaintiff." *Id.* This Court considers those to be relevant factors assisting the Court in its determination of the merits of the plaintiff's claim here.

Here, the defendant purchased both Domain Names—multiple versions of the plaintiff's real name—for less than twenty dollars in total, and, within several days, posted an offer to sell the Domain Names for $1,000,000 each. She did not conduct business at the sites before offering them for sale; indeed, the record reflects that she contemporaneously indicated her intention to sell the artwork and "also"—not, for example, "with"—the Domain Names. Like the defendants in *Schmidheiny*, the defendant here offered the sites for sale at a price exorbitantly beyond the Domain Names' actual value to anyone other than the plaintiff. That, the Court concludes, is

strongly probative of a specific intent to profit.  Even construing the defendant's pledge

to donate the proceeds from her sale of the artwork described on the Web site "to

organizations that aid in the protections of free speech"—an inference that is not required

by the text on the site—does not defeat the logical conclusion that the defendant was

motivated by an intent to profit from the registration of the sites.  A closer parsing of the

word "profit" supports this view:  The term is defined by the *Oxford English Dictionary*

as "[t]he pecuniary gain in any transaction" or "the amount by which value acquired

exceeds value expended."  12 Oxford English Dictionary 579 (2d ed. 1989).

     In short, the defendant has put forth no serious argument—and the Court cannot

divine any from the record—which would defeat the conclusion that the defendant, by

registering the Domain Names without the plaintiff's consent, specifically intended to

profit by the sale of the Web sites, in violation of 15 U.S.C. § 8131(1)(1).

     <u>Section 8131(1)(B)</u>

     Even though the Court concludes that the plaintiff has satisfied the liability

subsection of the statute, the defendant's qualification for the exception found in section

8131(1)(B) would remove her from the reach of the ACPA.  However, the Court

concludes that the defendant does not meet the requirements of that exception because

she has failed to meet its requirement of "good faith."

     The basis of the defendant's argument is that the Airplane carries the word

"Bogoni" on its surface, making it a qualifying work under Title 17 and protecting her

sale of the work in conjunction with the Domain Names through the exception of section

8131(1)(B).  The defendant has at least a colorable claim to be "us[ing]" the plaintiff's

name "in . . . a work of authorship protected under Title 17"—which include "original

works of authorship fixed in any tangible medium of expression," 17 U.S.C. § 102(a)—
and she is undoubtedly the owner of the work.  Further, neither party suggests that there
is any contractual prohibition of the defendant's registration of the Domain Names.

Two issues remain, however.  First, the Court has substantial questions about
whether the statement on paulbogoni.org—offered after a description of her sale (for an
unspecified price) of the artwork of her and her daughter—that the defendant is "also"
selling the Domain Names would meet section 8131(1)(B)'s requirement that the
defendant "intends to sell the domain name *in conjunction with* the lawful exploitation of
the work."  Indeed, the sales are arguably completely separate offers made on the site.
Second, even passing over that issue, the Court is simply not convinced that the
defendant has made any showing of good faith here to qualify for the statutory exception.

As in the Court's inquiry into the defendant's "specific intent to profit," several of
the defendant's actions stand out in this regard.  The defendant contends that her use of
the Domain Names is intended to sell the artwork she and her daughter made, but only
more than one month after the Complaint in this action was filed did the defendant post to
either Web site a photograph of the artwork for sale.  In addition, the offer to sell the
Domain Names on paulbogoni.org for $1,000,000 each appears in bold type, while the
description of the artwork precedes it in normal font.  Related, the defendant has not
offered any explanation for what, precisely, the plaintiff's name has to do with the
artwork on which it appears and, in any event, the plaintiff's name only appears on one of
the artworks for sale.  Furthermore, the Web site purports to be written by the defendant's
daughter, who is three years old, while it is clearly the work of the defendant, who does
not contend otherwise.  Finally, at the hearing before the Court, counsel for the plaintiff

represented that the plaintiff himself appears in a photograph on paulbogoni.org—a charge not denied by the defendant—demonstrating the specific and targeted nature of the defendant's actions.  Indeed, while evidence of good faith is entirely absent from the record here, evidence of bad faith abounds.  The Court therefore concludes that the defendant has not met the requirements of section 8131(1)(B) to qualify for the exception to liability under the statute.

Furthermore, there is no question that the balance of harms favors the plaintiff.  It is difficult to see any actual harm that will be visited upon the defendant should the Court grant a preliminary injunction restraining her use of the Domain Names, while the harm to the plaintiff is manifest.[5]

For the foregoing reasons, then, the Court concludes that the plaintiff has demonstrated a likelihood of success on the merits of his claim under section 8131.

II. Irreparable Harm to the Plaintiff Absent Injunctive Relief

A. Governing Law

The Second Circuit has stated that "[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).  "To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Id.* (alterations and internal quotation marks omitted).  Thus, "[w]here there is an adequate remedy at law, such as an award of money damages, injunctions are

---

[5] The harm to the plaintiff is further discussed in Part II, *infra*.

unavailable except in extraordinary circumstances." *Id.* (internal quotation marks omitted).

> B. Application

The plaintiff's Complaint alleges that the defendant's "conduct has caused [him] to lose control over the reputation and goodwill associated with this personal name, both for personal and business purposes, and he has suffered and continues to suffer other immeasurable damages." *Id.* ¶ 17. Without an injunction, the plaintiff represents, he "will suffer irreparable harm because the damages sustained will be immeasurable, unpredictable, and unending." *Id.* Finally, because of the nature of control over a Web site, the plaintiff contends that "the irreparable injury prong is inexorably intertwined with the success on the merits claim in ACPA cases." Pl.'s Mem. in Supp. of Preliminary Injunction ("Pl.'s Mem.") at 9 (Dec. 2, 2011), ECF No. 5. For her part, the defendant argues that the plaintiff's business reputation cannot be harmed by her maintenance of the Domain Names because his business "is not conducted under the name Paul Bogoni" and that he instead uses corporate entities. Def.'s Mem. in Opp. to Preliminary Injunction Motion ("Def.'s Opp.") at 6 (Dec. 19, 2011), ECF No. 10. She further contends that the plaintiff's good will in his philanthropic efforts has already been "tarnished" by his involvement in certain other "wrongdoing," and that, therefore, there is no potential for further harm. *Id.*

The Court is satisfied that allowing the defendant to continue operation of the Domain Names would produce an actual injury that would not be remediable after trial. Though the Web sites do not currently display content that might be deemed offensive or damaging to the plaintiff, the parties made clear to the Court during oral argument that

the parties' relationship is, at the very least, contentious, and there is undoubtedly the potential for harm in the imminent future. Additionally, the mere fact that both Domain Names are spelled *only* with the plaintiff's name weighs quite heavily in favor of the plaintiff here; any time the plaintiff meets a new person, that person—or, for that matter, anyone the plaintiff already knows—will be just clicks away from visiting one of the sites run by the defendant. Even if the defendant never posts damaging material, the Court agrees with the plaintiff that the use of the plaintiff's name in the Domain Names "create[s] a likelihood of confusion as to the source, sponsorship, affiliation and endorsement of those sites." The defendant has submitted no argument or evidentiary support as to why such confusion would be unfounded, and the Court determines that the plaintiff's arguments are sound.

The Court therefore concludes that the plaintiff has met his burden of demonstrating irreparable harm in this case.

III. Public Interest

A. Governing Law

Though the Second Circuit "has rarely considered the public's interest before deciding whether an injunction should issue," *Salinger v. Colting*, 607 F.3d 68, 79 n.8 (2d Cir. 2010), it has adopted an inquiry into whether "the public interest would not be disserved by the issuance of a preliminary injunction" in the wake of several recent Supreme Court cases. *Id.* at 80 (internal quotation marks omitted) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

B. Application

Determining the public interest in a case such as this, which presents two individual litigants contesting the use of Web sites tied to the name of an individual person, is not a straightforward inquiry.  On one hand, consideration of the First Amendment values motivating, and the Copyright Act concerns behind, the exemption found in section 8131(1)(B) of the statute at issue here might counsel a cautious approach to concluding that enjoining a citizen's use of her legally acquired platform serves the public interest.  In that vein, the defendant contends that "[a]s domain names are used to identify and promote artists in many genres, the public interest would certainly be harmed if a form of artistic expression were curtailed by a prohibition on using a particular domain name."  Def.'s Opp. at 6–7.

On the other hand, though, there is undoubtedly a great public interest in the vigilant enforcement of congressional statutes.  *See, e.g.*, *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 849 (2d Cir. 1987) (discussing the "pervasive public interest in the enforcement of certain federal statutes").  Likewise, as the plaintiff argues, "[t]he provisions of the ACPA serve to protect the interests of consumers and businesses alike in preventing deception and confusion caused by the bad faith registration of domain names that are identical or confusingly similar to personal names."  Pl.'s Mem. at 9–10. While case law suggests that such a concern is more appropriately applied to the context of cybersquatting and trademarks, *see, e.g.*, *Shields v. Zuccarini*, 254 F.3d 476, 486 (3d Cir. 2001); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000), it is still relevant to the Court's inquiry here, where an individual's exact name is being used without his permission, *see* 145 Cong. Rec. S14,986, S15,019 (1999) (statement of

Sen. Hatch) ("As with trademark cybersquatting, cybersquatting of personal names poses similar threats to consumers and e-commerce in that it causes confusion as to the source or sponsorship of goods or services, including confusion as to the sponsorship or affiliation of websites bearing individuals' names.  In addition, more and more people are being harmed by people who register other people['] s names and hold them out for sale for huge sums or money or use them for various nefarious purposes.").

The Court therefore concludes that the public interest weighs in favor of granting a preliminary injunction here to enjoin the defendant from continuous use of the Domain Names which, the Court has determined, is substantially likely to violate the statute at issue here and which will irreparably and continuously injure the plaintiff absent an injunction.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction is GRANTED.  The Court ORDERS that:

(1) the defendant, Vicdania Gomez, and all persons acting in concert with her are ordered to remove all existing content from the Domain Names, www.paulbogoni.org and www.paulbogoni.com;

(2) the defendant, Vicdania Gomez, and all persons acting in concert with her are enjoined from further operating and maintaining the Domain Names, www.paulbogoni.org and www.paulbogoni.com;

(3) the defendant, Vicdania Gomez, and all persons acting in concert with her are enjoined from transferring the domain names to third parties without the Court's consent prior to a permanent resolution of this action on the merits; and

(4) this matter is referred to the assigned magistrate judge for a settlement conference.

      SO ORDERED.

Dated: New York, New York
       December 28, 2011

                                     Richard J. Holwell
                             United States District Judge